Jovita CASAREZ, Plaintiff,

v.

**VAL VERDE COUNTY, A Political Subdivision of the State of Texas, and Maria Elena Cardenas, County Clerk of Val Verde County, Defendants.**

Civil Action No. DR–96–CA–108.

United States District Court,
W.D. Texas,
Del Rio Division.

June 23, 1997.

Alpha Hernandez, Del Rio, TX, David R. Richards, Austin, TX, George Joseph Korbel, Texas Rural Legal Aid, San Antonio, TX, for Jovita Casarez.

Ana M. Markowski, County Attorney's Office, Del Rio, TX, for Val Verde County, Maria Elena Cardenas.

Richard F. Gutierrez, Del Rio, TX, Ralph A. Lopez, Lopez, Lotz, Pauerstein & Stahl, San Antonio, TX, Jonathan D. Pauerstein, Arter & Hadden, San Antonio, TX, for D'Wayne Jernigan.

Thomas Edward Quirk, Quirk & Mansell, P.C., San Antonio, TX, for Murry M. Kachel.

Murry M. Kachel, Del Rio, TX, pro se.

Leslie Stephen Mendelsohn, Mendelsohn & Jackson, P.C., San Antonio, TX, Judith A. Sanders–Castro, San Antonio, TX, Robert Garza, Del Rio, TX, for Oscar Gonzalez, Jr.

Judith A. Sanders–Castro, San Antonio, TX, Robert Garza, Del Rio, TX, for Frank Coronado.

Javier Aguilar, Special Asst. Atty. Gen., Austin, TX, for State of Tex.

## ORDER REGARDING PRELIMINARY INJUNCTION

BIERY, District Judge.

In a season usually reserved for community peace, Christmas 1996 in Val Verde County, Texas, echoed with the braying of Democrats alleging improper voting in local elections by absent voters. Much political rhetoric to the contrary notwithstanding, the case does not involve military voters per se; the question would be similar if the Republican ox was gored by absent Democratic migrant farm workers thought to have voted erroneously in local elections.[1] The issue is not *whether* absent voters, military or otherwise, may vote; the issue is *where* they may vote.

The Republican response evoked images of a roiling fire ant mound. Grandstanding ensued in both partisan camps and

> The Democrats filed suit, without delay,
> To purge Val Verde of the KKK.[2]

After careful consideration, and finding some preliminary evidence to call into question the integrity of the election results, this Court granted a preliminary injunction requiring all players to stay on first base until, consistent with appropriate judicial process, Texas state courts could address the threshold state election legal and factual issues. *Casarez v. Val Verde County,* 957 F.Supp. 847 (W.D.Tex.1997). To protect the putative election victors, the Democratic contestants were required to post secured bonds.

Presided over by Texas District Judge Stephen Ables, the state election contest came on for trial June 16, 1997—a five and a half month hiatus for the ostensible winners, but not long over the span of eternity. Moreover, both Republican and Democratic candidates engaged in legal maneuvering which prevented the state trial court from hearing the case earlier.[3] In spite of an adequate

---

1. A Farmer came to a neighboring Lawyer, expressing great concern for an accident which he said had just happened. One of your Oxen, continued he, has been gored by an unlucky Bull of mine, and I should be glad to know how I am to make you reparation. Thou art a very honest fellow, replied the Lawyer, and wilt not think it unreasonable that I expect one of thy Oxen in return. It is no more than justice quoth the Farmer, to be sure; but what did I say?—I mistake—It is *your* Bull that has killed one of *my* Oxen. Indeed says the Lawyer, <u>that alters the case</u>: I must inquire into the affair; and if—*And If!* said the Farmer— the business I find would have been concluded without an *if*, had you been as ready to do justice to others as to exact it from them. NOAH WEBSTER, THE AMERICAN SPELLING BOOK 101–02 (Hartford, Hudson & Goodwin 1788) (italics emphasis in original; underline emphasis added); *see also* M.H. Hoeflich, *Law in the Republican Classroom,* 43 KAN.L.REV 711, 717 (1993). *See, e.g.,* John MacCormack, *Ex–McAllen Mayor Moves to Void Vote,* SAN ANTONIO EXPRESS NEWS, June 5, 1997, at 5B (Anglo mayoral loser contests election because of alleged absent Hispanic votes improperly allowed).

2. As a result of the controversy, it was discovered the Republican candidate for county commissioner Kachel, though he initially denied it under oath, had in his youth been active in the Ku Klux Klan. But for the injunctive relief granted in this case, the party of Lincoln would now have him as an office holder. Mr. Kachel has subsequently indicated his desire to decline the office.

3. * February 18, 1997: Pursuant to section 74.053 of the Texas Government Code, Democratic state court contestant Gonzalez filed an objection to the assignment of the Honorable Mark Tolle to preside in the pending state election contest.

    * February 24, 1997: The Honorable W.T. McDonald, Jr. was assigned to preside over the state court case.

    * March 18, 1997: Republican state court contestee Kachel filed an objection to Judge McDonald.

    * March 20, 1997: The Honorable Stephen B. Ables, Presiding Judge of the Sixth Administrative Judicial Region, was assigned presiding judge of the state election contest.

    * April 4, 1997: State court contestants Gonzalez and Coronado filed objections attempting to strike Judge Ables.

opportunity afforded by the preliminary injunction, the Democratic contestants displayed a dearth of discovery in preparation for the state trial on the merits. A modicum of perspicacity and large amounts of money would have led contestants to develop through depositions the intent to return and community ties to Val Verde County, or lack thereof, of the 800 absent voters. The paucity of contestants' preparation transformed the braying blare into something more akin to a fizzling whisper.

Plaintiff-intervenors complain of the state judge's refusal to admit on the merits undeveloped preliminary injunction evidence. Informal survey questionnaires not objected to by the Republican intervenor-defendants were for the limited purpose of the federal preliminary injunction hearing. Further use of that informal information for trial on the merits in state or federal court would have required formal admissible and expensive depositions of the contested absent voters. Plaintiff-intervenors chose not to make the effort to engage in such discovery in the state proceeding. There is no reason to believe that plaintiff-intervenors, given a second bite at the apple on the merits in federal court, would go through the expensive process of deposing the contested absent voters.

All parties having received due process and following a three day trial on the merits, the state court ably issued its ruling:

> The contestants Oscar Gonzalez, Jr. and Frank Coronado have failed to prove, by clear and convincing evidence, illegal votes were cast in the subject elections and more importantly have wholly failed to prove illegal votes cast, if any, affected the outcome of the subject elections. The contestants' requests for relief are in all things denied.

Now before the Court are defendant-intervenors Jernigan's and Kachel's motions seeking to lift the preliminary injunction and plaintiff-intervenors Gonzalez's and Coronado's response. This Court abstained from making the final fact finding about the voting residency qualifications of the 800 absent voters. *Casarez*, 957 F.Supp. at 851. The integrity of the judicial process is better served by deference to the state court on these local issues. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Implicit in this Court's preliminary injunction is the promise that the will of the Val Verde electorate will prevail after an objective and orderly state review of the contested elections. This Court keeps its promises based on the law and the proof, or, in this case, the lack of formal admissible proof in the state trial on the merits, and irrespective of which political party prevails.

### Conclusion

1. The Voting Rights Act guarantees the right to vote without dilution of minority votes. *Thornburg v. Gingles*, 478 U.S. 30, 45, 46–48, 106 S.Ct. 2752, 2763, 2764–65, 92 L.Ed.2d 25 (1986). It does not guarantee electoral victories for protected minorities. *Johnson v. De Grandy*, 512 U.S. 997, 1014 n. 11, 114 S.Ct. 2647, 2658 n. 11, 129 L.Ed.2d 775 (1994). Indeed, the record shows Republican sheriff candidate Jernigan to have Hispanic support.

---

* April 7, 1997: Judge Ables denied the objection to his assignment, finding section 74.053 of the Texas Government Code applies only to retired or nonelected judges, not to elected judges who have the authority under the Texas Constitution to exchange benches, such as Judge Ables and Judge Thurmond.

* April 10, 1997: State court contestants Gonzalez and Coronado filed a joint motion for leave to file Petition for Writ of Mandamus and/or Writ of Prohibition and Brief in Support against Judge Ables in the Fourth Court of Appeals, San Antonio, Texas.

* April 15, 1997: The Fourth Court of Appeals denied the motion for leave to file, finding Judge Ables had the authority under the Texas Constitution to exchange benches with Judge Thurmond. *Gonzalez v. Ables*, 945 S.W.2d 253 (Tex.App.—San Antonio 1997, orig. proceeding [leave denied]).

* April 17, 1997: Democratic state court contestants Gonzalez and Coronado filed a motion for leave to file a petition for writ of mandamus with the Supreme Court of Texas. That same day, the state supreme court stayed the state court election contest until further notice.

* May 21, 1997: The motion for leave to file petition for writ of mandamus was overruled by the Supreme Court of Texas.

2. To show dilution, contestants first must prove the contested votes were cast improperly. They have failed to develop their proof and satisfy their burden. *League of United Latin Am. Citizens v. Clements,* 999 F.2d 831, 853, 876 (5th Cir.1993), *cert. denied,* 510 U.S. 1071, 114 S.Ct. 878, 127 L.Ed.2d 74 (1994); *Alvarez v. Espinoza,* 844 S.W.2d 238, 242 (Tex.App.—San Antonio 1992, writ dism'd w.o.j.).

3. Elections and lawsuits have consequences. Contestants having failed to anchor the foundation of support for continuation of the preliminary injunction, the preliminary injunction is lifted.

It is so ORDERED.