**Jovita CASAREZ, Plaintiff,**

v.

**VAL VERDE COUNTY, A Political Subdivision of the State of Texas, and Maria Elena Cardenas, County Clerk of Val Verde County, Defendants.**

No. Civ.A. DR–96–CA–108.

United States District Court,
W.D. Texas,
Del Rio Division.

March 6, 1998.

Order Supplementing Opinion,
July 17, 1998.

Alpha Hernandez, Del Rio, TX, George Joseph Korbel, Texas Rural Legal Aid, San Antonio, TX, David R. Richards, Santa Fe, NM, for Jovita Casarez, plaintiff.

Ana M. Markowski, County Attorney's Office, Del Rio, TX, for Val Verde County, Maria Elena Cardenas, defendants.

Richard F. Gutierrez, Del Rio, TX, Jonathan D. Pauerstein, Arter & Hadden, San Antonio, TX, Ralph A. Lopez, Law Offices of Fidel Rodriguez, Jr., San Antonio, TX, for D'Wayne Jernigan, intervenor.

Thomas Edward Quirk, Quirk & Mansell, P.C., San Antonio, TX, for Murry M. Kachel, intervenor.

Murry M. Kachel, Del Rio, TX, intervenor pro se.

Leslie Stephen Mendelsohn, Mendelsohn & Jackson, P.C., San Antonio, TX, Judith A. Sanders–Castro, Mendelsohn & Jackson, P.C., San Antonio, TX, Robert Garza, Attorney at Law, Del Rio, TX, for Oscar Gonzalez, Jr., intervenor.

Judith A. Sanders–Castro, Mendelsohn & Jackson, P.C., San Antonio, TX, Robert Garza, Attorney at Law, Del Rio, TX, for Frank Coronado, intervenor.

Javier Aguilar, Special Asst. Attorney General, Austin, TX, for State of Texas, intervenor.

## AMENDED ORDER

BIERY, District Judge.

This third episode of the Casarez Trilogy[1] presents plaintiff's request to amend her complaint to join the United States Department of Defense and Secretary of State of Texas as defendants.

The proposed amended complaint amplifies plaintiff's earlier allegations to include charges the Department of Defense and Secretary of State have failed to implement properly the Uniformed and Overseas Citizens Absentee Voting Act, ("UOCAVA"), 42 U.S.C. § 1973ff et seq., resulting in ineligible absent military voters participating in local elections as opposed to casting ballots only in elections for federal officials. Therefore, plaintiff contends the Hispanic vote is diluted, resulting in a Voting Rights Act violation and violation of the principle of one voter, one vote enunciated in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

Plaintiff must lay the foundation of her cause of action by not only **alleging** ineligible votes, but also **proving** ineligible votes under Texas election law. This Court afforded plaintiff and plaintiff-intervenors an opportunity to meet the threshold burden of showing Texas election law violations regarding ineligibility. See Casarez I (preliminary injunction entered deferring to state court); Casarez II (following five and one half month discovery period and trial, state court judge found insufficient evidence to conclude ineligible votes had been cast).

■ In her motion to reconsider this Court's original order of January 21, 1998, plaintiff correctly points out she was not a party to the statutory election contest brought in state court by plaintiff-intervenors Gonzalez and Coronado. Plaintiff Casarez chose not to intervene pursuant to section 223.004 of the Texas Election Code[2] to have her say in the state court action, relying apparently on candidates Gonzalez and Coronado to develop and prove the ineligibility of the absent voters. For plaintiff Casarez to now have a second bite at the apple in federal court on the state law issue is not in the interest of judicial economy and is precluded by concepts of collateral estoppel. See Montana v. United States, 440 U.S. 147, 153–55, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (doctrine of collateral estoppel implicated when nonparty plaintiff with proprietary interest in state court proceedings seeks to redetermine issues in federal court previously resolved by state judge); State Farm Fire & Casualty Co. v. Fullerton, 118 F.3d 374, 377, 386 (5th Cir.1997) (principles of collateral estoppel ap-

---

1. See Casarez I, 957 F.Supp. 847 (W.D.Tex.1997) and Casarez II, 967 F.Supp. 917 (W.D.Tex.1997).

2. Tex.Elec.Code Ann. § 223.004(a) (Vernon 1986) provides: "The Court may permit one or more qualified voters of the territory covered by the contested election to intervene as contestants or contestees."

ply to plaintiff who could have intervened in earlier lawsuit, but who took "wait and see" attitude, and now seeks to relitigate issues in second lawsuit). Had plaintiff-intervenors prevailed in the state court action, plaintiff no doubt would have been content to accept the benefit. She cannot have it both ways. *See Sysco Food Servs., Inc. v. Trapnell,* 890 S.W.2d 796, 803–04 (Tex.1994) (goals of issue preclusion include conservation of judicial resources, protection of defendants from repetitive lawsuits and prevention of inconsistent judgments). Having failed to build the foundation, the walls of plaintiff's legal edifice cannot stand. It would be appropriate for summary judgment motions to be filed.

Plaintiff also contends in her motion to reconsider she was denied the right to conduct discovery by the Court's order of May 9, 1997. The record reflects, however, this Court, following the state court trial, entered a Scheduling Order dated August 1, 1997, for discovery. Even if this Court were to allow plaintiff a second opportunity, there is a dearth of evidence between August 1, 1997, and January 21, 1998, indicating plaintiff has expended the time, effort and considerable sums of money required to depose enough of the 800 absent military voters located in various parts of the globe to seek proof of her allegations.

Also in her motion to reconsider, plaintiff admits she has conducted no discovery, but contends this is so because she was waiting for the Court to rule on her motion to amend her complaint to add the Department of Defense and Secretary of State of Texas as defendants. Adding these defendants would not have relieved plaintiff of her threshold burden of proving the absent military members were ineligible to vote in local elections in Val Verde County.

The Court infers from plaintiff's proposed amended complaint a desire to have the federal courts assist the executive branches of the United States and Texas in redrafting the government forms and procedures implementing the UOCAVA. While the guidance provided to local election officials such as Val Verde County Clerk Cardenas could no doubt be improved, this Court respectfully declines the invitation to be involved in writing forms so long as there are other appropriate state law remedies and so long as there is no indication of a concert of action to deny citizens or groups of citizens the full power of their ballot.

As discussed in *Casarez I,* the issues raised by participation in local elections by military members are not new. *See Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); *see also* J. Sam Winters, *Uniformed, Federal Services Ballot Act,* 31 Tex.B.J. 1025 (1968). Indeed, principles of federalism and civilian control of the military would seem to necessitate armed services personnel having some ongoing connection to the local community and the state to be eligible to vote in state and local elections. For **any** non-resident voter, e.g. college students, members of the military, migrant workers, two elements must be shown: an intent to return and indicia of contact to the community. Tex.Elec.Code Ann. §§ 11.001, 11.002, 13.001, 101.001 (Vernon 1986 & Supp. 1998); *Carrington,* 380 U.S. at 96, 85 S.Ct. 775. Otherwise, a popular military figure could mount a successful political campaign for state or local office relying on mailed ballots from armed service members who had never set foot in the state or city in question. To paraphrase the inimitable Yogi Berra: If James Madison and Alexander Hamilton were alive, the very idea would cause them to turn over in their graves.

As citizens of Val Verde County approach another election season, it is appropriate to invoke the lesson of Occam's Razor: "Entia non sunt multiplicanda præter necessitatem."[3] Translated into today's words, it becomes: "Don't complicate things any more than is required." In modern vernacular: Keep it simple. Rather than rely on complex federal voting rights litigation **after** an election, the Texas Legislature has provided a precise method **before** an election to protect the integrity of local ballots if it is believed

---

**3.** Wordsworth Dictionary of Phrase & Fable 773 (1994). William of Occam, born in the village of Ockham in Surrey (England), was the great Franciscan scholastic philosopher of the 14th century. It is believed he died in 1349. *Id.*

ineligible people, military or civilian, are attempting to vote:

§ 88.001. Challenge Authorized

The eligibility to vote of a person voting an early voting ballot by mail may be challenged as provided by this chapter by:

(1) the early voting clerk;

(2) a member of the early voting ballot board;

(3) a watcher observing the early voting ballot board;

(4) a registered voter who is eligible to vote in the election.

Tex.Elec.Code Ann. § 88.001 (Vernon Supp. 1998). The person challenging the application for a mail ballot should then follow the procedures set forth in § 88.002 and § 88.003.

If one fails to exercise one's state law remedies, expectations of federal relief are more remote. To be forewarned is to be forearmed.

Plaintiff's Motion to Amend Complaint and Join Parties is DENIED; Plaintiff Jovita Casarez' Motion to Reconsider is DENIED.

It is so ORDERED.

ADDENDUM TO AMENDED ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

Now before the Court are motions for summary judgment presented by plaintiff, defendants and defendant-intervenors Jernigan and Kachel and responses. Background of this litigation may be found at *Casarez I* (957 F.Supp. 847 (W.D.Tex.1997)) and *Casarez II* (967 F.Supp. 917 (W.D.Tex.1997)).

The summary judgment record discloses these undisputed facts:

● On December 4, 1996, Oscar Gonzalez, Jr. filed an action against D'Wayne Jernigan in the 63rd Judicial District Court of Val Verde County, Texas, contesting the results of the November 1996 general election for Val Verde County Sheriff under the Texas Election Code. Later, Frank Coronado joined the suit as a co-contestant challenging his loss of the race for County Commissioner, Precinct 1, to Murry M. Kachel. The suit then became styled *Oscar Gonzalez, Jr. and Frank Coronado, Contestants v. D'Wayne Jernigan and Murry M. Kachel, Contestees.* The contestants alleged approximately 800 military votes submitted by mail through the Federal Post Card Application Act were illegally cast because the voters failed to meet Texas state law residency requirements.

● Approximately two weeks later, on December 19, 1996, Jovita Casarez filed this action against Val Verde County and County Clerk Maria Elena Cardenas in federal court seeking declaratory and injunctive relief for defendants' alleged violations of the Texas Election Code and the federal Voting Rights Act in the 1996 Val Verde County elections for Sheriff and County Commissioner, Precinct 1. Plaintiff alleges the counting of the approximately 800 absentee ballots diluted her vote thereby violating her rights under the federal Voting Rights Act. As in the state court election contest, plaintiff Casarez' allegations are based on assertions the absentee votes were cast by persons who submitted federal post card applications for ballots and who did not meet the residency requirements prescribed by Texas election law.

● Mr. Gonzalez, Mr. Coronado, Mr. Jernigan and Mr. Kachel were allowed to intervene in the federal litigation.

● In January of 1997, this Court issued a preliminary injunction after a three day evidentiary hearing. In abstaining from making the final fact finding about the voting residency qualifications of the 800 absent voters, *Casarez I,* 957 F.Supp. at 851–52, the Court described its action as follows:

● After careful consideration ... this Court granted a preliminary injunction requiring all players to stay on first base until, consistent with appropriate judicial process, Texas state courts could address the threshold state election legal and factual issues. *Casarez II,* 967 F.Supp. at 918.

● Beginning on June 16, 1997, the state court election contest was tried in Val Verde County, Texas.

- On June 19, 1997, the state court judge ruled Mr. Gonzalez and Mr. Coronado had failed to establish illegal votes were cast or any illegal votes affected the outcome of the election. The validity of the November 1996 elections was upheld. *See Casarez II*, 967 F.Supp. at 918–20.

- In light of the state court's decision, on June 23, 1997, this Court dissolved the preliminary injunction. *Casarez II*, 967 F.Supp. at 920. As stated above in the Amended order:

- Plaintiff must lay the foundation of her cause of action by not only **alleging** ineligible votes, but also **proving** ineligible votes under Texas election law. This Court afforded plaintiff an opportunity to meet her threshold burden of showing Texas election law violations regarding ineligibility.... Having failed to build the foundation, the walls of plaintiff's legal edifice cannot stand.

- In *Casarez II*, the Court also noted the "integrity of the judicial process is better served by deference to the state court on these local issues" and "implicit in this Court's preliminary injunction is the promise that the will of the Val Verde electorate will prevail after an objective and orderly state review of the contested elections." 967 F.Supp. at 919.

- On February 27, 1998, the state court contestants voluntarily abandoned their appeal of the judgment rendered in state court. The matter was dismissed by the Fourth Court of Appeals District of Texas, San Antonio.

- Motions for summary judgment now pending before the Court were filed.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* FED.R.CIV.P. 56(c). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing there is a genuine issue for trial.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. 2505. In deciding a motion for summary judgment, evidence favorable to the nonmovant must be taken as true and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. 2505.

## SUMMARY JUDGMENT ANALYSIS

The law of this circuit is and has been for almost three decades that claims premised on alleged violations of state election laws should be resolved in state courts. *See Hubbard v. Ammerman*, 465 F.2d 1169, 1176, 1181 (5th Cir.1972), *cert. denied*, 410 U.S. 910, 93 S.Ct. 967, 35 L.Ed.2d 272 (1973); *see also Welch v. McKenzie*, 765 F.2d 1311, 1316–17 (5th Cir.1985); *Gamza v. Aguirre*, 619 F.2d 449, 453–54 (5th Cir.1980). Had plaintiff-intervenors met their burden of proving illegally cast absentee ballots in the first filed state election contest, they would next have had to prove in federal court a dilution of votes of a protected class under the Voting Rights Act. Plaintiff and plaintiff-intervenors cannot go over the pitcher's mound to second base, skipping first base along the way.[1]

Plaintiff and plaintiff-intervenors contend errors by the state trial judge umpiring the state election contest were of constitutionally infirm proportions, precluding a full at bat in state court. This argument strikes out, if for no other reason than because plaintiff-intervenors failed to exhaust their state remedies by voluntarily abandoning their state court appeal in which they could have challenged the state judge's perceived misdeeds.

Having voluntarily dismissed the state court appeal, plaintiff and plaintiff-intervenors nonetheless want this Court to consider whether the state trial judge violated the Due Process Clause during the trial to determine whether the votes had been illegally cast. One may not procure federal intervention by terminating the state judicial process prematurely or foregoing the state appeal to attack the trial court's judgment in

---

1. Though choosing not to be a party to the state action, plaintiff Casarez is nevertheless bound by the loss because of principles of issue preclusion. *See* above discussion in the Amended Order.

federal court. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

> Federal post-trial intervention, in a fashion designed to annul the results of a state trial, ... deprives the States of a function which quite legitimately is left to them, that of overseeing trial court dispositions of constitutional issues which arise in civil litigation over which they have jurisdiction.... In short, we do not believe that a State's judicial system would be fairly accorded the opportunity to resolve the federal issues arising in its courts if a federal district court were permitted to substitute itself for the State's appellate courts.

*Id.* at 609, 95 S.Ct. 1200.

Because the first obligation of proving in state court challenged absentee votes were improperly cast and affected the outcome of the contested elections was not met, summary judgment is GRANTED in favor of defendants and defendant-intervenors Jernigan and Kachel. Plaintiff Casarez' motion for summary judgment is denied.

IT IS SO ORDERED.