Jovita CASAREZ, Plaintiff,

v.

**VAL VERDE COUNTY, A Political Subdivision of the State of Texas, and Maria Elena Cardenas, County Clerk of Val Verde County, Defendants.**

No. CIV.A.DR–96–CA–108–FB.

United States District Court,
W.D. Texas,
Del Rio Division.

Nov. 4, 1998.

750

Alpha Hernandez, Del Rio, TX, David R. Richards, Attorney at Law, Santa Fe, NM, for Jovita Casarez.

Ana M. Markowski, County Attorney's Office, Del Rio, TX, for Val Verde County, Maria Elena Cardenas.

Richard F. Gutierrez, Del Rio, TX, Jonathan D. Pauerstein, Arter & Hadden, San Antonio, TX, Ralph A. Lopez, Law Offices of Fidel Rodriguez, Jr., San Antonio, TX, for D'Wayne Jernigan.

Thomas Edward Quirk, Quirk & Mansell, P.C., San Antonio, TX, for Murry M. Kachel.

Murry M. Kachel, Del Rio, TX, pro se.

Leslie Stephen Mendelsohn, Mendelsohn & Jackson, P.C., San Antonio, TX, Judith A. Sanders–Castro, Mendelsohn & Jackson, P.C., San Antonio, TX, Robert Garza, Del Rio, TX, for Oscar Gonzalez, Jr.

Judith A. Sanders–Castro, Mendelsohn & Jackson, P.C., San Antonio, TX, Robert Garza, Del Rio, TX, for Frank Coronado.

Javier Aguilar, Special Asst. Atty. Gen., Austin, TX, for State of Texas.

## ADMINISTRATIVE ORDER REGARDING COSTS, DAMAGES AND ATTORNEYS' FEES

BIERY, District Judge.

During what should have been the peaceful December holidays of 1996, citizens of Val Verde County, Texas, became embroiled in this voting rights case and related state election contest litigation concerning the election of sheriff and county commissioner. *See Casarez I, Casarez v. Val Verde County,* 957 F.Supp. 847 (W.D.Tex.1997), *Casarez II, Casarez v. Val Verde County,* 967 F.Supp. 917 (W.D.Tex.1997); *Casarez III, Casarez v. Val Verde County,* 16 F.Supp.2d 727, No. CIV. A.DR–96–CA–108, 1998 WL 467005 (W.D.Tex. March 6, 1998).

Having prevailed in state and federal court, defendant-intervenors Jernigan and Kachel seek costs pursuant to 28 U.S.C. 1920, monetary damages flowing from being kept out of office for five and one-half months and attorneys' fees, all being sought from plaintiff and plaintiff-intervenors.

### COSTS

That this dispute essentially is a Republican–Democratic political tiff is confirmed by attempts to have party activists on both sides

fund the litigation. For example, defendant-intervenor Jernigan's journal supporting claims for costs shows contributions from the Associated Republicans of Texas (A.R.T.), the Republican Veterans of Texas and several individual party members.

Defendant-intervenor Jernigan asks reimbursement for expenses incurred in communicating with his party's congressional representatives, but cites no authority for blurring the lines of separation of powers in the American constitutional system which would allow for such payment. Defendant-intervenor Jernigan further seeks funds for a private investigator hired to research electoral matters in Mexico from 1969 forward. How these expenditures relate to Texas elections and this litigation is "curiouser and curiouser." LEWIS CARROLL, ALICE'S ADVENTURES IN WONDERLAND AND THROUGH THE LOOKING GLASS 26 (Penguin Books 1960). These requests are denied.

28 U.S.C. § 1920 provides in relevant part: A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters ....

Those requesting costs bear the burden of furnishing a reasonable accounting detailing the basic for each request. *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1099 (5th Cir.1982), *modified on other grounds*, 701 F.2d 542 (5th Cir.1983)(en banc), *overruled on other grounds by International Woodworkers of Am., AFL–CIO, and Local 5–376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir.), and *J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 790 F.2d 1193 (5th Cir.1986). Each expenditure must be supported by some evidence, *Id.* Noting defendant-intervenors' requests for costs lacked the requisite detail, the Court invited Mr. Jernigan and Mr. Kachel to provide further documentation for their requests.

The following costs are recoverable as necessarily obtained for use in the case:

- deposition transcript costs requested by defendant-intervenors Jernigan and Kachel;
- transcripts of the preliminary injunction proceedings and the telephonic hearing with the Court requested by defendant-intervenor Jernigan;
- interpretation services during plaintiff's deposition as requested by defendant-intervenor Jernigan;
- the fee for filing the notice of appeal with the Fifth Circuit Court of Appeals, as requested by defendant-intervenor Jernigan, is recoverable as a fee of the clerk pursuant to 28 U.S.C. § 1920(1);
- copies of plaintiff's "Depositions on Written Questions" as requested by defendant-intervenor Kachel unless, as plaintiff-intervenors state in their response to the request, copies of these documents were supplied to Mr. Kachel without reimbursement at plaintiff's expense;
- copies made or filing fees assessed at the offices of the District Clerk and County Clerk of Val Verde County as requested by defendant-intervenor Jernigan.

28 U.S.C. § 1920(1),(2),(4),(6); see *also Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir.1991)(costs of copies recoverable as long as request contains itemized entry so Court may determine copies were necessarily obtained for use in case); *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 133 (5th Cir.1983)(costs of pretrial transcripts and interpretation services during deposition recoverable if necessarily obtained for use in case); *Copper Liquor, Inc.*, 684 F.2d at 1099(costs of reasonable number of deposition transcripts recoverable as long as copies necessarily obtained for use in case).

Costs disallowed are:

- information sent to the Congress of the United States;
- private Mexican investigation fees;

- copy costs (with the exception of the itemized entry as to plaintiff's Depositions on Written Questions discussed above) requested by defendant-intervenor Kachel;
- copy costs (with the exception of the copies made or filing fees assessed at the offices of the District Clerk and County Clerk of Val Verde County discussed above) requested by defendant-intervenor Jernigan;
- the general mileage reimbursement request made by defendant-intervenor Kachel;
- the title examination fee request made by defendant-intervenor Jernigan;
- protector sheet, three-ring binder and photo sheet reimbursement requests made by defendant-intervenor Jernigan;
- courier fees, postage and facsimile reimbursement requests made by defendant-intervenors Jernigan and Kachel;

*Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964)(discretion must "be sparingly exercised with reference to expenses not specifically allowed by statute.") *Fogleman*, 920 F.2d at 286 (costs of copies not recoverable in absence of itemized entry making some demonstration copies were necessarily obtained for use in case); *Migis v. Pearle Vision, Inc.*, 944 F.Supp. 508, 518 (N.D.Tex.1996) (courier fees, postage and facsimiles are not included in statute and are more akin to overhead costs which cannot be recovered under 28 U.S.C. § 1920), *aff'd in part and rev'd in part*, 135 F.3d 1041, 1048–49 (5th Cir.1998)(affirming trial court's disallowance of costs).

### DAMAGES AS TO DEFENDANT–INTERVENOR JERNIGAN

■ In the event a preliminary injunction is lifted or dissolved, a previously enjoined defendant may recover damages up to the value of the bond. *See Phillips v. Chas., Schreiner Bank*, 894 F.2d 127, 131 (5th Cir. 1990)(bond requirement assures defendant it may readily collect damages without further litigation and without regard to possible insolvency of opposing party); *see also* FED. R.CIV.P. 65(c). Because plaintiff and plaintiff-intervenors obtained the preliminary injunction which kept defendant-intervenor Jernigan from office and the *salary* which flowed therefrom, and because the preliminary injunction was ultimately lifted, defendant-intervenor Jernigan is entitled to what he would otherwise would have received.

What he would have received is based on Texas law. The Texas Election Code allows a contestee such as defendant-intervenor Jernigan to hold office during an election contest, and further provides entitlement to "the emoluments of office that accrue during the period of occupancy." TEX. ELEC. CODE ANN. § 221.015(a),(c) (Vernon Supp.1998). Emolument is "profit from office, employment or labor; compensation; fees or salary." *Brown v. Meyer*, 787 S.W.2d 42, 45 (Tex. 1990). Had plaintiff and plaintiff-intervenors proceeded only with a state election contest, defendant-intervenor Jernigan would have been in office receiving compensation during the litigation. He is therefore entitled to recover his salary during the five and one-half month period of time he was kept out of office by the preliminary injunction.

### DAMAGES AS TO DEFENDANT–INTERVENOR KACHEL

■ Early in the course of discovery, defendant-intervenor Kachel was found to have been a leader of the Ku Klux Klan while stationed with the United States Air Force in Germany, and he sought to withdraw as the Republican nominee for county commissioner when this came to light. Following his success in the state court litigation, Mr. Kachel declined the office. The county judge along with county commissioners selected another individual to be commissioner. Defendant-intervenor Kachel presents no authority for the concept of being compensated for an office he never held, decided he did not want and does not presently hold notwithstanding his prevailing status in the litigation. Defendant-intervenor Kachel's request for damages is denied.

### ATTORNEYS' FEES

■ A prevailing defendant in a Voting Rights Act case shall be awarded attorneys'

fees only when plaintiff's underlying claim is "frivolous, unreasonable, or groundless, or the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). The Court must determine frivolousness as of the beginning of the suit, not based on who ultimately prevails. *See id.* at 421–22, 98 S.Ct. 694. An action is not frivolous, unreasonable or groundless merely because plaintiff does not prevail. Nor is a suit unreasonable or without merit merely because plaintiff's allegations are legally insufficient to merit a trial. *Hughes v. Rowe,* 449 U.S. 5, 15–16, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)(plaintiff's suit not frivolous, unreasonable or groundless merely because dispositive motion granted in favor of defendant); *see also James v. Capital City Press,* 742 F.Supp. 347, 352–53 (M.D.La. 1990)("even though plaintiff failed to put forth any evidence to maintain his burden of proof [in summary judgment proceedings], the initial claim itself was not frivolous."). This is especially true where, as here, claims of plaintiff and plaintiff-intervenors were given detailed consideration during a three-day evidentiary hearing resulting in a preliminary injunction supported by some evidence showing improper nonresident voting. *Casarez I,* 957 F.Supp. 847 (W.D.Tex.1997)(entering preliminary injunction). Plaintiffs and plaintiff-intervenors however were not able to muster the resources to prove their case on the merits in the state court election contest. *Casarez II,* 967 F.Supp. 917 (W.D.Tex.1997)(lifting preliminary injunction). Legally insufficient allegations which do not merit trial, but require careful consideration by the court such as those raised in this case, are not groundless or meritless. *See Hughes,* 449 U.S. at 16 & n. 13, 101 S.Ct. 173.

 Defendant-intervenors request $45,791.03 (Mr. Jernigan) and $22,500 (Mr. Kachel) in attorneys' fees. Fee applicants must not only establish legal entitlement to an award, but also document the appropriate hours expended and demonstrate hourly rates. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Without such records, the reviewing court is unable to estimate the value of the lawyers' services. *Id.*

> Compiling raw totals does not complete the inquiry. It does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended. In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* are not properly billed to one's *adversary* pursuant to statutory authority.

*Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980)(emphasis in original)(quoted in part in *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933). Evidence must be presented which allows the district court to make findings on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974).[1] Even if there were a legal entitlement, defendant-intervenors have submitted no detailed records for any of the attorneys claiming compensable time.

The state election contest involved the same issues regarding nonresident voters. The three-day preliminary injunctive hearing and related preparation clearly did not result in $68,000 in attorneys' fees separate and apart from the state issues. *See Hensley,* 461 U.S. at 434–35, 103 S.Ct. 1933 (fee applicants obligated to make good faith effort to exclude from fee request excessive, redundant or otherwise unnecessary hours). Most of the legal work done in the federal case was related to the state court issues. Had plaintiff-intervenors and defendant-intervenors litigated this matter only as the state election contest which it fundamentally is, there is no basis in Texas statutory law for

---

**1.** These include: (1) the time and labor required to handle the case; (2) the novelty and difficulty of the questions involved; (3) the skill necessary to handle the case; (4) the preclusion of other employment as a result of the representation; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client; (8) the amount involved and the results obtained; (9) the experience reputation and ability of the attorney(s); (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

either prevailing contestants or prevailing contestees to recover attorneys' fees. Rather, those expenses are simply one potential part of playing political poker. Because this case was not frivolous ab initio, because of the dearth of supporting documentation and because there is no basis in Texas law, the attorneys' fees requests are denied.

## CONCLUSION

Other than as modified by statute, American common law generally does not have a "loser pays" rule as does England. Stephan Landsman, *The History of Contingency and the Contingency of History,* 47 DePaul L.Rev. 261, 263–64 (1998). To enact such a rule is within the purview of the legislative branch, not the judicial branch. Unless and until the law is changed, those who choose to be involved in electoral and litigation processes should be aware that consequences and costs flow from these choices, whether they are for bumper stickers, media advertising, posting collateral for bonds or attorneys' fees.

Judgment is entered jointly and severally against plaintiff and plaintiff-intervenors and in favor of defendant-intervenor Jernigan:

a) Costs—$2,952.85 as itemized below:

- deposition transcripts: $1,452.60;

- transcripts of the preliminary injunction proceedings and telephonic hearing with the Court: $1,258.75;

- interpretation services: $125;

- the fee for filing the notice of appeal with the Fifth Circuit Court of Appeals: $105;

- copies made or filing fees assessed at the offices of the District Clerk and County Clerk of Val Verde County: $11.50.

b) Damages—$17,000 as itemized below:

- salary during the five and one-half month period of time Mr. Jernigan was kept out of office prior to his taking the oath: $17,000.

Judgment is entered jointly and severally against plaintiff and plaintiff-intervenors and in favor of defendant-intervenor Kachel:

a) Costs—$2,743.30 as itemized below:

- deposition transcripts: $1,194.30;

- copies of plaintiff's "Depositions on Written Questions" as requested by defendant-intervenor Kachel unless copies of these documents were supplied to Mr. Kachel without reimbursement at plaintiff's expense: $1,549.

All other relief is denied.