[No. 46104. En Banc. March 27, 1980.]

STUART D. HEATON, *Respondent,* v. KEN IMUS, ET AL, *Petitioners.*

*Olson & Olson* and *Charles R. Olson,* for petitioners.

*Oles, Morrison, Rinker, Stanislaw & Ashbaugh, Sam E. Baker, Jr.,* and *Arthur D. McGarry,* for respondent.

WILLIAMS, J.—This case presents the question whether lost profits are recoverable by the prevailing party as part

of a quantum meruit recovery in an action based on principles of quasi contract. The Court of Appeals held that lost profits are not recoverable in such an action. *Heaton v. Imus*, 21 Wn. App. 914, 587 P.2d 602 (1978). We reverse.

Respondent Stuart D. Heaton, doing business as Heaton Construction, performed rehabilitation work on realty in Bellingham, Washington, owned by petitioners Ken and Barbara Imus, doing business as Jacaranda Land and Development Corporation, a foreign corporation. When Imus' payments to Heaton lagged during the construction process, Heaton ceased work and on March 18, 1976, filed a mechanic's lien.

At trial for foreclosure of the lien, the parties agreed that they had an oral, implied–in–fact contract, but Heaton argued that the agreed compensation was on a cost–plus basis, while Imus contended that it was for a lump sum. The trial court found there was no contract at all between the parties, but that Heaton should recover on the basis of quantum meruit. The award to Heaton included prejudgment interest on certain invoices which had been submitted by Heaton to Imus during the construction period. However, the judgment did not include Heaton's lost profits for the completed work, because, the court found, Heaton "failed to disclose when he knew or should have known that the cost of the building was going to be in excess of defendant Imus' original budget . . ." Finding of fact No. 11.

On April 8, 1977, the court entered judgment ordering foreclosure of Heaton's lien in the amount of $95,081.39, adding costs and attorney fees of $14,725.

Both parties appealed. Imus' appeal included challenges to virtually every aspect of the decision; Heaton's cross appeal was limited to the trial court's refusal to include lost profits in its award of quasi–contractual damages. The Court of Appeals affirmed the trial court in all respects except for the award of prejudgment interest, and accordingly modified the trial court's judgment by reducing it in the amount denominated as interest. *Heaton.*

Although both parties sought review on a number of issues in this court, we granted review only on the lost profits question. We note that we are in fact deciding two questions: (1) whether the law permits recovery of lost profits as part of a quantum meruit recovery when there has been no contract, and if so, (2) whether Heaton is entitled to lost profits under the circumstances of this case.

## I

■ As we have stated before, the law recognizes two classes of implied contracts: those implied in fact and those implied in law. *Milone & Tucci, Inc. v. Bona Fide Builders, Inc.*, 49 Wn.2d 363, 367, 301 P.2d 759 (1956). A contract implied in fact is an agreement of the parties arrived at from their conduct rather than their expressions of assent. Like an express contract, "*it grows out of the intentions of the parties to the transaction, and there must be a meeting of minds.*" *Milone & Tucci, Inc.*, at 368, quoting with approval, *Western Oil Ref. Co. v. Underwood*, 83 Ind. App. 488, 491, 149 N.E. 85 (1925). A contract implied in law, or "quasi contract", on the other hand, arises from an implied duty of the parties not based on a contract, or on any consent or agreement. *Milone & Tucci, Inc.*, at 367; *Bill v. Gattavara*, 34 Wn.2d 645, 650, 209 P.2d 457 (1949); 1 A. Corbin, *Contracts* 44 (1963).

Recovery in quasi contract is based on the prevention of unjust enrichment. Thus, the doctrine will be applied when money or property has been placed in one person's possession under circumstances that "in equity and good conscience, he ought not to retain it." *Bill*, at 650.

In the present case there is no dispute with the trial court's finding that there was no enforceable contract between the parties, and we thus conclude that any recovery to Heaton must be granted on the basis of quasi contract.

Quantum meruit is not a legal obligation like quasi contract, but is rather a remedy: "a reasonable amount for work done", regardless of the existence of a contract. 1 A.

Corbin, at 51. We have said the literal meaning of the term is "'as much as he deserved.'" *Losli v. Foster*, 37 Wn.2d 220, 233, 222 P.2d 824 (1950).

The Court of Appeals apparently interpreted *Losli* to mean that lost profits may be included in a quantum meruit recovery only where there has been an enforceable contract, either express or implied:

> Heaton argues that the trial court erred in failing to award reasonable profit. His argument might be well taken had the trial court found an implied in fact contract. *Bignold v. King County*, 65 Wn.2d 817, 826, 399 P.2d 611 (1965); *Losli v. Foster*, 37 Wn.2d 220, 232, 222 P.2d 824 (1950). Here, however, the trial court based its award on principles of quasi contract, thereby excepting reasonable profit as a factor for consideration. *Dravo Corp. v. L.W. Moses Co.* [6 Wn. App. 74, 92, 492 P.2d 1058 (1971)].

*Heaton*, at 918.

We believe the court's conclusion is erroneous, as an examination of the cited cases demonstrates. In *Losli*, the court expressly found that there was no enforceable contract:

> [C]ounsel for the [defendants] urges us to find that there was a binding contract involving a maximum price of twelve thousand dollars, *even though the trial court held otherwise. An examination of the record convinces us that the trial court was correct in so ruling.*

(Italics ours.) *Losli*, at 231. Thus, the recovery in *Losli* must have been based on quasi contract, with the court fixing an amount in quantum meruit to avoid unjust enrichment.[1]

---

[1]Unclear language in *Losli* may explain the Court of Appeals result. In upholding the trial court in *Losli*, we characterized its holding, in part, as a "conclusion that the essential elements of a contract were lacking," so "that the adjustment between the builder and owners must be on the basis of an implied contract." *Losli*, at 229. Since an implied contract is an enforceable contract even though its terms are not express, our meaning in *Losli* would have been more clear had we said "quasi contract" rather than "implied contract." *See* 1 A. Corbin, at 40–41.

In *Dravo Corp. v. L.W. Moses Co.,* 6 Wn. App. 74, 91, 492 P.2d 1058 (1971), the court stated:

> Quantum meruit has been defined to include recovery allowed where one party's performance occurs in the absence of a contract. *Losli v. Foster,* 37 Wn.2d 220, 222 P.2d 824 (1950) or where substantial change not within contemplation of the parties occurs with a resulting benefit to one party and expense to the other. *In such instances,* the Washington Supreme Court has allowed the burdened party to recover the value of his performance in quantum meruit and has allowed profit to be included in the computation of the ratio of performance. *Bignold v. King County,* 65 Wn.2d 817, 399 P.2d 611 (1965).

(Italics ours.) The Court of Appeals reliance on *Dravo Corp.* for the conclusion that lost profits are not recoverable in a quasi–contract action is therefore misplaced. When the recovery in such an action is based on quantum meruit, lost profits are an appropriate element where there are no circumstances calling for their exclusion. *Bignold v. King County,* 65 Wn.2d 817, 826, 399 P.2d 611 (1965).

## II

Because the Court of Appeals decided that lost profits are unavailable as a matter of law in a quasi–contractual recovery, it did not address Heaton's argument that under the facts of this case he is entitled to lost profits. Since we conclude that lost profits are recoverable in a proper case, we must decide if this is such a case.

■ A trial court may exercise discretion in granting lost profits to a prevailing party and may exclude them if there are circumstances which call for such exclusion. *Bignold, supra* at 826. Thus, in *Losli,* the trial court refused to include lost profits where the prevailing party, an experienced contractor, failed to advise the owners of the final probable costs of construction of a residence. *Losli,* at 233.

The trial court in the present case refused to award lost profits to Heaton because "he failed to disclose when he knew or should have known that the cost of the building was going to be in excess of defendant Imus' original

budget". Finding of fact No. 11. The finding of nondisclosure is somewhat in conflict with another finding of fact, unchallenged by Imus, that

In late March, 1975, plaintiff prepared a detailed breakdown . . . showing the concrete and steel portions of the Fairhaven building had increased $18,900 above the October, 1974, estimate . . . Plaintiff and defendant Imus spoke by phone concerning these increases in cost in late March or early April, 1975. Plaintiff informed defendant Imus of the additional costs and let defendant Imus know what they were confronted with if they were going to build the building. Defendant Imus understood there had been a change in cost and was prepared to allocate additional funds . . .

Finding of fact No. 8. Read as a whole, the findings of fact indicate that while Heaton did not disclose to Imus the total excess cost of the project, he did inform Imus that the excess over the original estimate of $263,000 would be at least $18,900. Accordingly the question comes down to whether lost profits must be excluded where a contractor fails to compute and disclose the total cost, even though he fully disclosed that the project would exceed the original budget.

Heaton contends he had no legal duty to attempt to calculate and disclose the final figure, and neither Imus nor the trial court cites any authority requiring such a duty. The sole authority for the trial court's finding appears to be several lines from *Losli,* at 232–33:

Profit is an appropriate factor in determining the *quantum meruit* where there are no circumstances which call for its exclusion. We believe that such circumstances are present here. *We refer particularly to appellant's failure, as an experienced contractor, to more fully and carefully advise the Fosters as to the probable costs.*

(Italics ours.)

A fair reading of *Losli* does not support the argument that there is a requirement that the total cost must always be disclosed before completion in order for a prevailing party to recoup lost profits. Rather, failure to disclose

under all the circumstances of that case seems to explain the result. *See Losli,* at 233.

The facts and circumstances in *Losli* are quite different from those in this case. The owners in *Losli* were a couple with no apparent building experience who employed an experienced contractor to build a residence for them. *Losli,* at 233. In contrast, Imus, an experienced businessman, is owner of a corporation, Jacaranda Land and Development Corporation, which was involved in large–scale rehabilitation of an area of Bellingham. He testified that he was "active in real estate", and was the owner of an automobile dealership, a leasing company, and several lesser companies. Moreover, the trial court found Imus was informed that the project costs were going to be in excess of the original estimate.

Under the circumstances of this case, we think it unjust to deny Heaton all profit on the work which he performed. As to the costs disclosed to Imus, Heaton should be awarded lost profits. This amount would be the profit on the value of the work represented by his original estimate of $263,000 plus the $18,900 the trial court found he had disclosed to Imus. The court found he had been paid for an unspecified portion of that amount, including 10 percent profit. We have no way of determining what portion of Heaton's $95,081.39 recovery for costs is attributable to the amounts disclosed to Imus. Accordingly, we remand to the trial court for a determination of lost profits in accord with this opinion.

The Court of Appeals is reversed, and the case is remanded to the trial court.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.