(i) Public Function
"Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." Florer v. Congregation Pidyon Shevuyim, N.A. , 639 F.3d 916, 924 (9th Cir. 2011) (internal quotation marks omitted ).
There is no showing that the Union was endowed by the State "with powers or functions governmental in nature." Florer, at 924. The evidence in the record is that the Union was functioning as a union. The statute challenged by the Plaintiffs, RCW 41.80.110, and Article 40 of the CBA do not vest the Union with authority reserved to the government. Because "[t]he public function test is satisfied only on a showing that the function at issue is 'both traditionally and exclusively governmental," and no such showing has been made here, the public function test is not met. Id.
(ii) Joint Action
" 'Joint action' exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party, or otherwise has so far insinuated itself into a position of interdependence with the non-governmental party that it must be recognized as a joint participant in the challenged activity." Naoko, at 996 (internal quotation marks and citations omitted ).
There is no showing that joint action exists here - that "state officials and private parties have acted in concert" to deprive the Plaintiffs of their constitutional rights. Naoko, at 996. There is no evidence that the State Defendants "affirm[ ], authorize[ ], encourage[ ], or facilitate[ ]" the *1014 contents of the agreements or have so "far insinuated [themselves] into a position of interdependence with the [Union] that it must be recognized as a joint participant in the challenged activity." Naoko, at 996. The State Defendants are prohibited from playing a role in the content of the agreements between the Plaintiffs and the Union. Even if the State Defendants approved of the contents of the agreements, of which there is no evidence, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." Caviness , at 817. The State Defendants' "mandatory indifference to the underlying merits," content, or validity of the agreements "refutes any characterization" by the Plaintiffs of a joint action between the State Defendants and the Union as to the "aspects of the [agreements] alleged to compromise" the Plaintiffs' First Amendment rights. Naoko, at 997. The Plaintiffs argue that they seek recovery, not only for the continued deduction of dues after Janus (and their notification that they no longer wished to be Union members), but also seek recovery for deductions of compelled agency fees before Janus was decided, which was authorized by a Washington statute at the time. The Plaintiffs make no showing that Janus should be given retroactive effect in a manner that would allow them to bootstrap such a claim. Janus specifically stated that its holding was limited, providing that, "States can keep their labor-relations systems exactly as they are - only they cannot force nonmembers to subsidize public-sector unions." Janus, at 2485, n. 27 (emphasis added ).
While the Plaintiffs assert that it is RCW 41.80.100 that is the source of the Union's authority to impose a fee on nonmembers (Dkt. 56, at 15), that argument is without merit. It is the agreements themselves that authorize the Union to collect dues in exchange for benefits. Even in the absence of RCW 41.80.100 or Article 40 of the CBA, the Union could attempt to enforce the agreements to pay dues independently, in a breach of contract action. RCW 41.80.100 and Article 40 of the CBA only require the State Defendants to perform an administrative task - after the Plaintiffs provided express written authorization for dues to be paid for a year, the State Defendants are to deduct those dues and send them to the Union. The State points out that it does this for other entities with periods of payment that are not revocable for a set period of time, like for the retirement plan and health plan. Dkt. 47, at 17. Moreover, there is no evidence that the State Defendants "in any meaningful way accept[ ] benefits derived from the allegedly unconstitutional actions." Naoko, at 997. There is no evidence in the record that the substance of the agreements are the product of joint action with Union and the State Defendants.
(iii) State Compulsion
Under the state compulsion test, "[a] state may be responsible for a private entity's actions if it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Caviness, at 816.
There is no evidence in this case that the State Defendants have "exercised coercive power" over the Union in regard to the agreements at issue. Caviness, at 816. The agreements at issue were made by private parties without standards established by the state. Further, there is no evidence that the State has provided significant "overt or covert" encouragement that the actions alleged to be unconstitutional here must "be deemed to be that of the State." Id. The requirements for the state compulsion test are not met.
*1015 (vi) Government Nexus
"Under the governmental nexus test, a private party acts under color of state law if there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Naoko, at 996, n.13.
This test is not met. There is no evidence that there is a "sufficiently close nexus between the State" and the content and or validity of the agreements "so that the action of the latter may be fairly treated as that of the State itself." The agreements at issue are between private parties.
c. Conclusion on State Action
The Plaintiffs' motion for summary judgment as to their First Amendment claim against the Union should be denied and the Union's motion for summary judgment should be granted. There is no evidence that the claimed constitutional deprivation here resulted from "the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the State is responsible." Naoko, at 996. There is no evidence that the Union "could be described in all fairness as a state actor," Id., under any of the four tests. The State Defendants' obligation to deduct fees in accordance with the authorization "agreements does not transform decisions about membership requirements [that they pay dues for a year] into state action." See Bain v. California Teachers Ass'n, 2016 WL 6804921, at *7 (C.D. Cal. May 2, 2016). The First Amendment claim against the Union should be dismissed. Because the Plaintiffs' constitutional claim fails at the state action stage, no decision is necessary on whether the initial or 2017 membership agreements violate the First Amendment. Naoko, at 1000.
2. First Amendment Claim Asserted Against the State Defendants
As above, all Plaintiffs' claims for relief against the State Defendants are dismissed because States are not "a person" under § 1983 and by operation of the Eleventh Amendment, except claims under § 1983 which seek prospective relief. The Plaintiffs First Amendment claims against the State Defendants, then relate only to RCW 41.80.100, as amended, and Article 40 of the amended CBA, which are currently in effect, and only for prospective relief.
The Plaintiffs assert that RCW 41.80.100 and the CBA compel the State to "deduct union dues/fees from the Plaintiffs' ... wages even though they have not clearly and affirmatively consented to the deductions" and so violate the First Amendment.
The Plaintiffs' motion for summary judgment against the State Defendants for violation of their First Amendment rights should be denied and the State Defendants' motion for summary judgment should be granted. RCW 41.80.100 provides that upon the Plaintiffs' written authorization, the State is obligated to "deduct[ ] from the payments to bargaining unit members the dues required for membership in the [Union]." RCW § 41.80.100 (3)(b)(i). Likewise, as amended in July of 2018, § 40.2 of the CBA provides:
The Employer agrees to deduct an amount equal to the membership dues from the salary of employees who request such deduction in writing within thirty (30) days of receipt of a properly completed request submitted to the appropriate agency payroll office. Such requests will be made on a Union payroll deduction authorization card. The Employer will honor the terms and conditions of each employee's signed membership card.
*1016 Dkt. 44-3, at 2. Under amended § 40.3(A), the CBA states that "[u]pon receipt of the employee's written authorization, the Employer [the State of Washington here] will deduct from the employee's salary an amount equal to the dues required to be a member of the Union." Id., at 3. In amended § 40.6, the CBA further provides that "[a]n employee may revoke his or her authorization for payroll deduction of payments to the Union by written notice to the Employer and the Union in accordance with the terms and conditions of their signed membership card." Id., at 7. The 2017 membership agreement, entitled "Payroll Deduction Authorization & Maintenance of Membership Card," provided, in part:
Yes! I stand united with my fellow State employees ... 100% Union ...
Yes! I want to be a union member...
Effective immediately, I hereby voluntarily authorize and direct my Employer to deduct from my pay each period, the amount of dues as set in accordance with the [Union] Constitution and By-Laws and authorize my Employer to remit such amount semi-monthly to the Union (currently 1.5% of my salary per pay period not to exceed the maximum). This voluntary authorization and assignment shall be irrevocable for a period of one year from the date of execution or until the termination date of the collective bargaining agreement (if there is one) between the Employer and the Union, whichever occurs sooner, and for year to year thereafter unless I give the Employer and the Union written notice of revocation not less than ten (10) days and not more than twenty (20) days before the end of any yearly period, regardless of whether I am or remain a member of the Union, unless I am no longer in active pay status in a [Union] bargaining unit; provided however, if the applicable collective-bargaining agreement specifies a longer or different revocation period, then only that period shall apply. This card supersedes any prior check-off authorization card I signed. I recognize that my authorization of dues deductions, and the continuation of such authorization from one year to the next, is voluntary and not a condition of my employment.
Dkts. 44-11 to 44-17.
The plain language of RCW 41.80.100 and the CBA do not compel involuntary dues deductions and do not violate the First Amendment. The parties do not dispute that all the Plaintiffs here signed the membership agreements and that they did not need to do so as a condition of their employment. The parties do not dispute that the State plays no role in deciding what terms and conditions are in the membership agreements; and under state law, cannot participate in any way in making those determinations. The State's deduction of dues from the Plaintiffs' pay is pursuant to the Plaintiffs' explicit written instructions in the 2017 agreements. The fact that the Plaintiffs are now challenging the constitutional validity of the underlying agreements does not lead to liability for the State, especially where the State is prohibited from interfering with Union activity. Further, Plaintiffs' assertions that the agreements are not valid because they had not waived their First Amendment rights under Janus in their authorization agreements because they did not know of those rights yet, is without merit. Plaintiffs seek a broad expansion of the holding in Janus . Janus does not apply here - Janus was not a union member, unlike the Plaintiffs here, and Janus did not agree to a dues deduction, unlike the Plaintiffs here. See Cooley v. California Statewide Law Enforcement Ass'n , 2019 WL 331170, at 2 (E.D. Cal. Jan. 25, 2019). "The relationship between unions and their *1017 voluntary members was not at issue in Janus. " Id. The notion that the Plaintiffs may have made a different choice if they knew "the Supreme Court would later invalidate public employee agency fee arrangements [in Janus ] does not void" their previous knowing agreements. Id.
To the extent that the Plaintiffs now argue that the membership agreement was not supported by consideration, is invalid due to mistake, was made under duress, or make some other assertion of validity based on contract law, they make no showing that the State Defendants are now liable under the First Amendment for those alleged failings. To do so would require the State Defendants to make a judgment about the validity of the contracts the Union and its members choose to enter, something the State is prohibited from doing. The State is not a party to the membership agreement. The Plaintiffs "cannot now invoke the First Amendment to wriggle out of [their] contractual duties." See Smith v. Superior Court, County of Contra Costa, 2018 WL 6072806 (N.D. Cal. Nov. 16, 2018). The Plaintiffs' First Amendment claims asserted against the State Defendants should be dismissed.
3. Conspiracy Claim for Violation of the First Amendment Asserted Against all Defendants
As stated above, Plaintiffs' First Amendment claims against the Union and State Defendants should be dismissed. Their conspiracy claim, which is predicated on the alleged First Amendment violations, also fails. Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126 (9th Cir. 1996). Further, the Plaintiffs do not to point to any evidence in the record to support their claim. The Plaintiffs' conspiracy claim should be dismissed.
E. CLAIMS FOR UNJUST ENRICHMENT AGAINST THE UNION
The Plaintiffs make claims for unjust enrichment against the Union. (Due to the operation of the Eleventh Amendment, the unjust enrichment claims against the State Defendants should be dismissed, as explained above.) Both the Plaintiffs and the Union move for summary judgment on this claim.
The elements of unjust enrichment are: "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." Young v. Young , 164 Wash.2d 477, 484-85, 191 P.3d 1258 (2008). "Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." Id., at 484, 191 P.3d 1258.
The parties here have a contractual relationship. The Plaintiffs' unjust enrichment claims are related to the same matter upon which they seek recovery. The unjust enrichment claims should be dismissed.
Moreover, even if the parties did not have a written contractual relationship, the Plaintiffs have failed to show that there is sufficient evidence in the circumstances here that it would be unjust for the Union to retain the dues. The Plaintiffs acknowledge that as Union members they received benefits and rights not available to non-members. Further, even after they announced that they no longer wanted to be Union members, it is not unjust for them to have to continue to pay dues for a limited time because that is what they agree to. The Plaintiffs have failed to show that the Union was unjustly enriched.
*1018 F. CONCLUSION
By this Order, all claims should be dismissed. This case should be closed.
III. ORDER
It is ORDERED that:
• The State Defendants' Motion for Summary Judgment (Dkt. 47) IS GRANTED ;
• The Union's Motion for Summary Judgment (Dkt. 46) IS GRANTED ; and
• The Plaintiffs' Cross-Motion for Summary Judgment (Dkt. 48) IS DENIED .
• This case IS DISMISSED .