# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KARL KERSTETER, | No. 82511-9-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| CONCRETE SCHOOL DISTRICT, a governmental entity, | |
| Respondent. | |

APPELWICK, J. — Kersteter appeals from summary judgment dismissal of his statutory claim that he was misclassified as a part-time employee to avoid payment of employment benefits and his common law claim that his employer was unjustly enriched by the excess hours he worked. We affirm.

## FACTS

Karl Kersteter worked for the Concrete School District as the transportation supervisor from 2006 to 2017. Every year Kersteter signed a new contract with Concrete. Each of these contracts indicated his job was less than full-time. But, his written statement indicated that he arrived at work before the buses left, around 5:00 a.m., and he stayed until the last bus returned around 5:00 p.m. He sometimes took a break from 9:15 a.m. to 12:30 p.m., but often missed this break when issues arose requiring his assistance. In this role, Kersteter estimates he worked about 8.75 hours a day, translating to about 43 hours per week, which was more than the hours in his contract.

When meeting about his new contract each year he asked for more time to be included in his contract. He asserted that these were always oral requests, not written. Kersteter's hours were gradually increased from .5 FTE[1] to .71 FTE. [2] Kersteter's highest salary in this position was $34,540 a year. He was enrolled in Washington Public Employment Retirement System (PERS) Plan 3. He asserted that his benefit entitlements were affected by his part-time status, because they were determined based on his part-time classification: at .5 FTE he received 50 percent of his benefits, and at .71 FTE, he received 71 percent of his benefits.

Although Kersteter believed he was working more than a part-time position, he stated that he continued to sign the part-time contracts because he needed to work and there was no place nearby offering similar positions. According to Barbara Hawkings, the former Concrete superintendent, Kersteter requested revisions related to his pay, hours, and FTE, but he never requested full-time hours and never told her that he was working full-time or over the hours in his contract.

Kersteter provided his notice of retirement to Concrete in 2017, with his last day as December 31, 2017. To fill the position mid-year, Concrete reclassified the position as full time and increased the salary to $54,000 per year. Concrete hired Kathy Lafreniere to succeed him as the transportation supervisor.

---

[1] "Full-time equivalency" ratios.

[2] The record does not include Kersteter's contracts with Concrete for the period from 2006-2007 to 2009-2010. The record includes his contracts from 2010-2011 through 2017-2018.

Beginning in the 2010-2011 contract his hours were compensated at .5 FTE. That remained the same until the 2013-2014 contract when it increased to .625 FTE. His hours were again increased in the 2016-2017 contract, to .71 FTE. In the 2017-2018 contract, his hours remained at .71 FTE.

Kersteter filed a complaint for unpaid wages under chapter 49.46 RCW, the minimum wage statute, and chapter 49.48 RCW, a statute covering wage payments and collections.[3]  Kersteter amended his complaint, removing those claims and instead alleging causes of action for: (1) unjust enrichment and/or in the alternative, quantum meruit; (2) misclassification as a part-time worker under RCW 49.44.170; and (3) attorney fees under the Washington wage payment act, chapter 49.48 RCW.

Concrete filed an answer with affirmative defenses including failure to make a claim of relief and lack of jurisdiction over the claim.  Additionally, Concrete asserted that the claims were barred by waiver, laches, res judicata, and failure to mitigate, among other claims.  Concrete then moved for summary judgment, arguing that unjust enrichment and quantum meruit do not apply to written contracts.  Kersteter followed with a motion for partial summary judgment on Concrete's affirmative defenses.

The court considered both Concrete's summary judgment motion and Kersteter's partial summary judgment motion.  It granted Concrete's summary judgment on unjust enrichment and quantum meruit, but denied summary judgment on misclassification.  The court granted Kersteter's motion for partial summary judgment and dismissed Concrete's affirmative defenses of lack of jurisdiction, failure to state a claim, exhaustion, and res judicata.  It did not dismiss Concrete's affirmative defense of waiver and/or estoppel.

---

[3] Prior to filing this lawsuit, Kersteter had filed a pro se wage claim with the Department of Labor and Industries and an administrative appeal with the Office of Administrative Hearings.  Both were dismissed before filing his complaint.

Concrete filed a second motion for partial summary judgment asking the court to dismiss all Kersteter's salary and pension claims.[4]  In support of this summary judgment, Concrete provided former superintendent Hawkings's declaration.  Hawkings stated that she classified this role as part-time based on information that other school districts of comparable size, demographics, and location had part-time transportation supervisors.

Kersteter filed a second motion for partial summary judgment.  He asked the court to find that RCW 49.44.170 does not require that the employer knowingly misclassified the employee and that the only facts in dispute were whether he was incorrectly classified and the amount of damages.  In support of this, Kersteter filed declarations stating that he regularly worked over 40 hours in a week, and that Hawkings verbally agreed that it was unfair that his contracts were for part-time work.

The court granted Concrete's motion.  It said the parties stipulated that Kersteter would not receive additional pension benefits if he was classified as full-time.  It found that "the only issue was should [Kersteter] have received more money, a higher salary, for the job he agreed to do at the agreed salary."  It denied Kersteter's motion in its entirety, and found that his claims of increased salary and pension did not fall under benefits within the scope of RCW 49.44.170.  Kersteter

---

[4] Concrete also raised a statute of limitations defense to all wages before 2015.  The court found that Kersteter's claims were subject to the three year statute of limitations under RCW 4.16.080, and all claims arising before June 5, 2015 were dismissed with prejudice.  This issue is not raised on appeal.

voluntarily dismissed all remaining claims. The parties agreed to a stipulation and order of dismissal that granted Concrete a final judgment and attorney fees.

Kersteter appeals the orders on competing motions for summary judgment, the order granting the defendant partial summary judgment, and the stipulation and order of dismissal.

## DISCUSSION

### I. Misclassification of Employees

We review summary judgment de novo, performing the same inquiry as the trial court. Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). "When ruling on a summary judgment motion, the court is to view all facts and reasonable inferences therefrom most favorably toward the nonmoving party." Id. "A court may grant summary judgment if the pleadings, affidavits, and depositions establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Id.

Kersteter argues the trial court erred in dismissing his damages claims under RCW 49.44.170. He argues that Concrete deliberately took advantage of him by paying a part-time salary for full-time work. He argues he is entitled to damages in the amount of the difference between his actual salary and what he should have been paid as a full-time employee and associated lost pension benefits. He asserts that these damages are based on his lost wages and are "squarely within the scope of damages that were contemplated by the Legislature" when it enacted RCW 49.44.170.

Concrete argues that RCW 49.44.170 does not apply to wages and Kersteter received the pension benefits he was entitled to receive. The pension benefit is based on a formula of wages and service years. It is not disputed that Kersteter was awarded a full service credit for each month worked. He was paid the full amount of the salary stated in his written contracts. So, any loss of pension benefits necessarily depends on having not been paid the proper amount of wages.

We review questions of statutory interpretation de novo. Associated Press v. Wash. State Legislature, 194 Wn.2d 915, 920, 454 P.3d 93 (2019). Under the rules of statutory interpretation, we must ascertain and carry out the legislature's intent. Id. If the statute's meaning is plain on its face, the court must give effect to that plain meaning as an expression of the legislature's intent. Id. If the statute is ambiguous, or susceptible to more than one reasonable meaning, it is appropriate to review the legislative history to glean intent. Id.

RCW 49.44.170 provides,

> (1) It is an unfair practice for any public employer to:
> (a) Misclassify any employee to avoid providing or continuing to provide employment-based benefits; or
> (b) Include any other language in a contract with an employee that requires the employee to forgo employment-based benefits.
> (2) The definitions in this subsection apply throughout chapter 155, Laws of 2002 unless the context clearly requires otherwise.
> (a) "Employee" means a person who is providing services for compensation to an employer, unless the person is free from the employer's direction and control over the performance of work. This definition shall be interpreted consistent with common law.
> (b) "Employment-based benefits" means any benefits to which employees are entitled under state law or employer policies or collective bargaining agreements applicable to the employee's correct classification.

6

(c) "Public employer" means: (i) Any unit of local government including, but not limited to, a county, city, town, municipal corporation, quasi-municipal corporation, or political subdivision; and (ii) the state, state institutions, and state agencies. This definition shall be interpreted consistent with common law.

(d) "Misclassify" and "misclassification" means to incorrectly classify or label a long-term public employee as "temporary," "leased," "contract," "seasonal," "intermittent," or "part-time," or to use a similar label that does not objectively describe the employee's actual work circumstances.

(3) An employee deeming himself or herself harmed in violation of subsection (1) of this section may bring a civil action in a court of competent jurisdiction.

Neither the term "benefit" nor "wage" is defined in the statute. "[W]e may discern the plain meaning of nontechnical statutory terms from their dictionary definitions." State v. Kintz, 169 Wn.2d 537, 547, 238 P.3d 470 (2010) (alteration in original). Webster's defines "benefit" as, "a payment or service provided for under an annuity, pension plan, or insurance policy, or government subsidized program." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 204 (2002). It defines "wage" as, "a pledge or payment of usually monetary remuneration by an employer especially for labor or services usually according to contract and on an hourly, daily, or piecework basis and often including bonuses, commission, and amounts paid by the employer for insurance, pension, hospitalization, and other benefits." Id. at 2568. These definitions suggest that "wages" can be read to include benefits, but "benefit" is not read to include wages.

Wages are not mentioned in RCW 49.44.170. Only one section in chapter 49.44 RCW—which covers violations and prohibited practices for employers—mentions wages. In RCW 49.44.050, an employment agent who misstates any material matter relating to wages paid to an employee is guilty of a misdemeanor.

7

But, even this section does not provide a remedy for unpaid wages. Remedies for wage claims are established elsewhere in Title 49, in chapter 49.46 RCW, chapter 49.48 RCW, chapter 49.52 RCW, and chapter 49.56 RCW.

"Wage" is defined elsewhere in Title 49 to mean "compensation due to an employee by reason of employment, payable in legal tender of the United States or checks on banks convertible into cash on demand at full face value, subject to such deductions, charges, or allowances as may be permitted by rules of the director." RCW 49.46.010(7). This definition is also applied in RCW 49.48.082(10). The plain language does not include benefits as part of wages.

We conclude the statute is not ambiguous. The plain meaning of employment-based benefits does not include wages.

Even if we assume the definition of employment based benefits is ambiguous, we would turn to the legislative history and reach the same result. The bill reports confirm the legislative concern about benefits rather than wages in the bill that became this law. In the final bill report, the background section states, "Public employers sometimes provide a lower level of health insurance coverage, retirement plan coverage, sick or annual leave, or other employment-based benefits to persons who are employed on a part-time, temporary, leased, contract, or other contingent basis." FINAL B. REP. ON ENGROSSED SUBSTITUTE S.B. 5264, at 1, 57th Leg., Reg. Sess. 144 (Wash. 2002). Wages are not included in this list.

This statute stemmed in part from the dispute about health care benefits in Mader v. Health Care Auth., 149 Wn.2d 458, 475 n.8, 70 P.3d 931 (2003) ("The 2002 legislature was reacting, in part, to the case before us when it enacted RCW

8

49.44.160 and .170."). In Mader, community college teachers were not eligible for healthcare over the summer, when they were not teaching courses. Id. at 462. The court grappled over whether the teacher's classification as "part-time" should affect their year-round healthcare coverage. Id. at 475. It wrote, "[T]he legislature indicated that the [Health Care Authority] should not exclude employees from eligibility for comprehensive health care coverage simply because they are labeled "'part-time.'" Id. The litigation addressed only the teachers' health care benefits. There was no consideration of their wages.

We hold that employee-based benefits as used in RCW 49.44.170 do not include wages. Kersteter abandoned all the wage claims under chapters 49.46 and 49.48 RCW when he filed his amended complaint. Any loss of pension benefits was dependent on the wage claim. The trial court properly dismissed his claims under RCW 49.44.170.

II.    Unjust Enrichment

Kersteter asks the appellate court to reinstate his unjust enrichment claims, as "the trial court had no basis in law, equity, or fact" for dismissing the claim.[5] First, he argues that his part-time work contracts do not address any claims that would arise around full-time work, and allow for a claim of unjust enrichment. Next, he argues that the trial court erred by concluding that Kersteter's claim for unjust enrichment was barred as a matter of law. Because Kersteter and Concrete had an express contract, no unjust enrichment claim applies.

---

[5] Below, Kersteter coupled unjust enrichment and quantum meruit claims. However, he does not argue quantum meruit before this court.

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." Young v. Young, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008). If a valid express contract exists, the courts will not allow a claim for unjust enrichment. MacDonald v. Hayner, 43 Wn. App. 81, 86, 715 P.2d 519 (1986).

In MacDonald, two attorneys contracted to produce a report within 60 days for a sum not to exceed $10,000. Id. at 82. It took them over six months to complete the work. Id. At one point, they were granted a 30 day extension, with no change in compensation. Id. They claimed that they had a conversation where the other party said they would negotiate the question of further compensation after submission of the report. Id. at 82-83. The attorneys claimed this created an implied contract beyond the express contract they had signed. Id. at 85. The court noted, "A contract implied in law, or 'quasi contract', arises from an implied duty of the parties not based on consent or agreement; it is based on the prevention of unjust enrichment." Id. (quoting Heaton v. Imus, 93 Wn.2d, 249, 252, 608 P.2d 631 (1980)). It held no unjust enrichment existed because "'A party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract.'" Id. at 85-86 (quoting Chandler v. Wash. Toll Bridge Auth., 17 Wn.2d 591, 604, 137 P.2d 97 (1943)). Like in MacDonald, Kersteter had an express contract with Concrete, and cannot raise an unjust

enrichment claim. The trial court properly granted summary judgment on Kersteter's unjust enrichment claims.[6]

III. Attorney Fees

Kersteter requests attorney fees under RCW 49.48.030. Under this statute, "[i]n any action in which any person is successful in recovering judgment for wages or salary owed to him or her, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer." RCW 49.48.030. Because we affirm the dismissal on all of the claims, Kersteter is not entitled to fees. Concrete does not request attorney fees on appeal.

We affirm.

_Appelwick, J._

WE CONCUR:

_Bowman, J._    _Mann, C.J._

---

[6] Because we affirm summary judgment on Concrete's motions, we need not address the denial of Kersteter's motions.